and others who are represented in our brief as the Wheatley appellants and plaintiffs. This is the case that goes back to 1989 and it involves two communities trying to survive in the state of Arkansas in a in the midst of a consolidation consideration. They're two small districts. One is largely black and the other is mostly white and they reach an accommodation which is placed in a settlement agreement and that settlement agreement called for educational presence in both communities, Wheatley and in Palestine. I apologize after the agreement was reached and approved by the court and continually thereafter the Palestine majority sought to eliminate and eradicate the consent decree and to eliminate educational presence in the community known as Wheatley. We have set forth that history in our brief and won't repeat it. I think it shows what I have said. We are here because we think that the district court erred in placing the burden of proof upon upon Wheatley in this desegregation case. It is our contention as we've argued in the brief that the standard that the court should have followed was set forth in Freeman versus Pitts and that the judge applied the wrong standards. This is not a change circumstance case. What about the last paragraph of her order? Do you think that captures the Freeman against Pitts standard? Do you recall that? Yeah, but she doesn't mention it. She didn't cite Freeman but she talks about, well she says the evidence establishes that defendants have complied in good faith with the remainder of the requirements set forth in the consent decree and that the vestiges of past discrimination have been eliminated to the extent practicable. Now is that the standard from Freeman that you say should apply? Well, I think that is the standard that should apply but the point is that the defendants were not required to assume a burden of proof at all and we were in the position of being the ones to go forward and meet the proof. We do not believe that they could have met the burden of proof and the so-called good faith standard is one that we could debate but I want to call your attention, Judge Carlson, to her opinion which is in appellant's, in the appendix of the appellant on page 362 and let me explain to you what how this proceeding evolved. The judge calls a hearing and she says, well let me hear what you have to say and we are in a position where we have to go forward without conducting any discovery. This is not a motion for preliminary injunction or anything like that and so we're in the position of going forward on a burden of proof without having, sort of like an ambush, without having any opportunity for discovery. She points up in an appendix number and footnote number five on page 362 of the appendix. Plaintiffs requested an opportunity for discovery prior to the hearing. The court decided to proceed with the hearing and determine at a later date whether further discovery was necessary. Although plaintiffs repeat their general complaint that they were not allowed time for discovery before the hearings, plaintiffs do not indicate what kind of discovery they still want or need to do to fully present their arguments. Therefore, the court finds there is no reason not to rule on the matter based on the evidence presented at the hearing. So here we are going into a hearing where the defendants have filed a motion. We've told the court in advance we want to be able to prepare for it. The court says, let me hear it. So we're going to assume the burden of proof and then we go forward on the basis of what we know without any proof. So what we want you to do simply is to address Freeman v. Pitts in a way which allows a remand so that the court can then, after affording us that opportunity, so that the court consider each of the Freeman factors. She does not redress, she does not address each of the Freeman factors. What factors are we talking about other than changed circumstances? Well, the main one is whether or not, she eliminated the entire consent decree by in effect taking their position that they could close the school. She modified that provision of the decree. No, she terminated the decree. It wasn't simply a modification. That was left ambiguous. You may well be right that without the mandate that there shall be a school physically in Wheatley, there isn't much left to the decree. But that provision of the decree, like any other provision, can be modified if the standards of RUFO are met, can't it? Well, this is a... That's kind of the essential issue here. Well, this is a Freeman v. Pitts case rather than a RUFO case, Your Honor. RUFO deals with prisoners. Well, you say that, but I'm not sure you've got any Supreme Court case that says RUFO doesn't apply to a desegregation decree. Those have a different standard than all the other federal consent decrees in the world. Well, RUFO doesn't place the burden of proof on the plaintiffs in this kind of a case. No, the burden of proof to prove the changed circumstances is on the party that wants the decree modified. I think that's without question, and I don't think that the district court misunderstood or misapplied that notion. Well, my concern is simply this. Right? I mean, you're saying that in addition to changed circumstances for a desegregation decree, more has to be proved. I think that's what you're saying. Well, I think that they have to prove certain things, and we have said them in our response. We have to show, at least they have to show, that they are committed to desegregated education that includes educational presence in Wheatley because that was the agreement. They can't simply just terminate the agreement simply because they want to. That is what they have been trying to do from day one after they entered into the agreement. We have shown very clearly from day one, day five, day 10, day 12, they've tried for the same reasons. And here is the problem that we had. We explained to the court, and it's in the record. We explained to the court that this district is, in effect, a district which does not demonstrate its commitment to desegregation. It's just the contrary. It's a district in a small community, which is around a lot of other majority African American communities, and they hold themselves open as a white flight district so that the people who attend the public schools of those districts can come to this particular district. That does not demonstrate a commitment to desegregated education, especially where the schools that were in the black community, are largely black community, are the ones being closed. That shows no commitment. Now, that's the standard of Freedmen v. Pitts. That's not set forth in Rufo. It appears that the percentage, if you look at the whole area, the percentage of the black school population has gone down. Well, we were not in a position to assess that. I mean, here's the problem. We believe there were several hundred of the 500 students who attended the school who were coming from other communities like Forest City, Mariana, Brinkley, just coming there so that they could have majority presence rather than being majority African American schools. So we don't know what that was, but we do know this. We know that those two schools, school districts, were 13 miles apart, the centers of the city. But that doesn't show how many were black and how many were white. And the superintendent had been principal of the school. He came on and he decided that he would go and make the same arguments and present some different kind of evidence. There's nothing changed between this and 2006 from what we see. But we weren't allowed to demonstrate that. That's the real problem. I would think the school records would have the home addresses of those who are attending. I would think that would be fairly easy to obtain. Well, I mean, if we had the opportunity to conduct discovery. Well, did you ask for that? Yes, we asked for an opportunity, Your Honor. No, no, no. Did you ask for that? You just spell out what you want. We think it's a white flag district. We think the home addresses of those attending the schools would establish that. We want those lists. That would be simple, wouldn't it? Well, Your Honor, I think the discovery that is simple sometimes is quite not so simple. We were denied all discovery. We were denied it. We were not granted an opportunity for any discovery. And that is not public information. She says you didn't indicate what kind of discovery you wanted or needed. Is that accurate? Or did you say here are the things that we need? We need time to get the following information. Well, this was after the hearing, Your Honor. Right. I'm asking at that point, did you? Well, we did explain to you. We told the court that we needed an opportunity to address the situation, the facts that had been presented in totality. We didn't have to say, but we want to go and deal with that particular fact or another particular fact. This is not quite like some of the burden of proof cases you've just heard. In this case, if you're going to eliminate a 20-year decree where you've had insurance monies for the rebuilding of a school, which had burned in the Wheatley community that are being used otherwise, amidst all this commitment of the majority of people trying to eliminate the school as they started off doing after they entered into the consent decree, you have to be in a position to go and look at what all the facts are. Now, just saying give us the addresses, that's not the only standard. The question is whether they were, this district was committed to convey to the residents of the Wheatley area that desegregation and continuation of equity was important. Now, I've asked for eight minutes, seven minutes in rebuttal or in response, and I'm down. I talk too much. Just look at it. You know from a long time. I'm down to three minutes and 20-odd seconds, so I'd like to reserve the remainder of my time if you don't mind. You're always articulate, so I don't apologize for taking the time as limited as we have to hear from you. Thank you. Mr. Rickett. Yes, sir. Thank you. My name is Jay Beckett. I'm an attorney for the Palestine Wheatley School District in eastern Arkansas and honored to argue on behalf of the district this morning. I guess in response to the questions or the argument made by Mr. Walker concerning the discovery issue, this was no real issue in my judgment before the lower court. The motion to modify or terminate the consent decree was filed early in the summer of 2012, and this wasn't like a request for injunctive relief where the court immediately heard the case. The case didn't get heard until October or November. And on the eve of trial, Mr. Walker requested the opportunity to do discovery. But in the intervening several-month time period, the district had done discovery. The district had taken some depositions in the case. But in the district's case, it was really an open book. If you look in the record, the motion to modify or terminate the consent decree filed by the district was really an open book, and explained with exhibits and much detail with the assistance of a demographer and other evidence provided by the district the factual basis for the district's argument that it should be allowed to move the middle school grades 5, 6, 7, and 8 to the Palestine campus for all the different reasons that were explained to the court. Mr. Walker argued that the plaintiffs never propounded any written discovery, no depositions were ever noticed, no informal requests for discovery were ever made, no requests after the district began taking depositions of some witnesses in order to present that evidence by deposition at trial, nothing of the sort nor any specifics ever mentioned by plaintiff or plaintiff's counsel as to what kind of discovery they specifically needed in order to defend the motion. So I really think that's sort of a red herring that this court should ignore. Can you give me the citations to federal cases where the RUFO modification analysis has been applied to desegregation decrees? I don't have any. Your Honor, I think the lower court So that's a serious issue, which you'd simply Pardon me? That's a serious issue, which you simply assume isn't there. I don't believe it is, Your Honor, because Why not? The Supreme Court has taken desegregation as a unique area of federal jurisprudence for half a century. Well, I don't disagree with that, Your Honor, but RUFO, like this case, involved a consent decree, and a consent decree is a consent decree. You know, I think Judge Wright, the lower court, referenced the significant jurisprudence in this court and the Supreme Court in determining that the consent decree in this case should be modified or terminated. But the RUFO standard, I think, you know, the guidance given by the Supreme Court and this court in the Gavin v. Branstad decision, you know, RUFO is a consent decree. Judges are to apply a flexible standard, and I think Judge Wright did that. But Judge Wright was also mindful that this being a school desegregation case, you know, a different one than the ones in Pulaski County, obviously, but it's a school desegregation case. I think Judge Wright was mindful of that standard. She referred to it and found that the district had met it. And, you know, we argued that the district had met that standard because, you know, just look at the evidence that the district provided as to what happened. This is not a district where separate schools would be running. The vestiges of discrimination have been removed, and, you know, 25 years have passed since that arrival. Well, who has the burden of proof on that? We do. The district does, we believe. And how did you prove it other than by your changed circumstances evidence? Well, that's... Where do I, what part of the record should I read for witnesses or documents specifically addressing that question? Well, the superintendent testified extensively for three or four hours that morning about the reasons why the school district, the school needed to be moved and talking about, you know, that was the school, the middle school over in Wheatley is the only school in the district that's in school improvement and how the high school, having all three campuses, high school, middle school, and the elementary grades on one campus would allow the district to leverage all the significant resources that No Child Left Behind, the academic accountability laws that have been passed since the Lakeview cases in Arkansas, the student testing laws that have been passed since No Child Left Behind in Lakeview, how the district could leverage all those initiatives, you know, having all the teachers on one campus increasing, by decreasing the amount of busing time, you would increase the amount of rest time, time to nurse the bodies, time to study. You know, it would just be an efficient means of doing it. And it's the way that all the other school districts of comparable size in Arkansas, especially in the Delta region of our state, that's the way those districts have made it work. It's the way they've improved their programs. And there was extensive testimony by the superintendent as to how this district has taken huge leaps forward, but, you know, still having two campuses to maintain is, you know, it puts a hole in the budget, which pulls resources away from being able to, you know, improve the educations of the children and make their, you know, make the education work better. I have a question about the population. Yes, ma'am. Does the record show how much of the population was affected by the state statute about school choice? Well, the school choice allows students from another district to attend, say in this case, the Palestine-Wheatley district, but those parents don't have to move. So the actual, there's not going to be a, if I understand Your Honor's question correctly, there wouldn't be an impact on the actual population within the various towns in which the Palestine-Wheatley district is made up of. No, the school population. Well, the school population, yes, there was evidence in the record. I believe there were like 87 school choice students during the, I guess, the 11-12 school year, which was the school year at issue right before the district filed its motion. And we didn't have specifics on the number of, many of those students were white, but they weren't all white. And I don't think there was specific testimony as to how many of those school choice students under the school choice statute at the time were white or black, but we did have a total number. And they weren't all white students. And there was no evidence in the record offered by the plaintiffs below, Mr. Walker's clients, as to, I mean, it was just an argument he made that the Palestine-Wheatley district is a white flight district. That was just argument, though. There was no evidence presented showing that the Palestine-Wheatley school district did things to cause some kind of white flight into the district. And it's really, in the district's mind, not a material, not an important argument. Did any teacher from the Wheatley school testify at the hearing? I believe we had one. When you say Wheatley, are you talking about one of the middle school teachers? The school that's going to be closed under this modification.  It was principally that testimony was from the demographer that did the work on the student populations and on the significant changes in population moving from the Wheatley area to the Palestine area. And then the superintendent testified extensively about all the different changes in the district and, you know, how the modification or termination of the decree would help the district, you know, kind of fix the hole in its budget, you know, stay out of fiscal distress, and also try to get the middle school out of academic distress and improve the test scores. So I understand what you said is that there are no students going to school there that don't live either in either the Wheatley or the Palestine districts. I'm not sure I understand the governor's question. Well, to take a wild shot, there's nobody from Little Rock. I mean, I know there's nobody from Little Rock, but there's nobody from an adjacent area that has chosen to come to these schools. There are a few. But I believe the record was that the district had 87 school choice students, which are students that reside outside the boundaries of the Palestine-Wheatley district, but, you know, the term is choiced in under that school choice statute that existed at the time. And as we said, many of those were white students from, as Mr. Walker said, Mariana, Forest City, and other neighboring communities, but they weren't all white students. I mean, there were some black students that choiced into the Palestine-Wheatley school district, but there was just no evidence that the district was doing things to attract them. It's equally as likely as, you know, those students simply thought that, you know, the educational program in Palestine-Wheatley was superior to what those parents felt their children could get in Forest City or Brinkley or Clarendon or some other neighboring community. Do you feel that the consent decree has been terminated? Yes, I do, because, you know, the district, there were a number of things in the decree. That was just a yes or no. Yes, sir. I do believe it was. And do you think that the Freeman against Pitts standard must be met to terminate the decree? I would say yes. Do you think the judge applied the Freeman against Pitts standard? I believe it's clear that she did by looking at the last paragraph of her order, Your Honor. Yes, sir. All right. So you think that RUFO isn't really the legal standard yet? The legal standard is Freeman against Pitts, and the question for us is whether the court properly found that the standard was met? Or how does RUFO play into it? I think RUFO plays into it because a lot of times in the desegregation cases, the court is looking at a desegregation settlement agreement, okay? And in this case, we're really looking, it was styled, the agreement in this case was styled as a consent decree. To me, RUFO is the Supreme Court's latest edification on what the standard is for a court when determining whether a consent decree should be modified or terminated. So to me, I think in a school desegregation case, I think Judge Wright got it correct. I think you look at Freeman, and then I think you also, I think RUFO has a place at the table, you know, because RUFO specifically talks about the flexible standard and the notion that determining whether a consent decree has been met is, it's a flexible standard that requires, that has to be decided under principles of equity. Well, in a nutshell, what was your case that the vestiges of past discrimination have been eliminated to the extent practical? Our case was that, you know, there's the absence of any evidence whatsoever that this district continues to operate any kind of a separate school district and the fact that we've complied fully with every bit of the consent decree that was entered into in 1990. I mean, that's, the district complied, the district, you know, changed the way its board, I mean, the issues Was the presence of a school in Wheatley necessary to eliminate the vestiges of discrimination? Apparently in 1990, it was thought that that was the case. And why is that not necessary anymore? Because the populations all moved. I mean, the circumstances were totally different. Back in 1990, there was a significant Afro-American population in Wheatley. You know, in this case So you think it comes down to the demographic changes? I believe it does. In fact, if you look at the board vote authorizing the superintendent to request relief or modification of the consent decree, you know, the African-American board member that represents the Wheatley district voted in favor of that motion and supported it because, you know, my understanding is that board member understood that, you know, what needed to happen here was the best case situation for all the different children in the district, not just those in Palestine and not just those in the Wheatley area, but the district as a whole. And it allowed the district to patch the hole in its budget that, you know, sad but true, these smaller districts in this part of Arkansas, they've all had to close and consolidate their campuses into one campus. You know, Earl, Cross County, Lee County, Helena, all those different districts in the area in the Delta that are the same size, they've all had to do that. It's just in order to remain viable, you know, in light of Lakeview, fiscal distress statutes, academic distress statutes. I've got to return to an earlier answer before you're out of town. You said absolutely, yes, the decree's been terminated. And the last sentence of the district court's order is the motion to modify or terminate is granted. Now, my reading of what the district court did would be that if there were meaningful paragraphs of the decree which were not rendered, as plaintiffs say, nugatory by the elimination of a physical school in Wheatley, the decree would continue to be in effect. What's your basis for asserting to the contrary? Other than what you hope our affirming order will permit you to say is law of the case. I would say that everything else in the consent decree has been complied with and put in place, and there are no plans to go back on such things. Give me the case where the Supreme Court has said long-time compliance is, you know, you earn your way out from under when the decree should be terminated. Well, that's RUFO. Well, it's not Munsingware, which RUFO, I'm sure, was applying. Right. Just because you obey a permanent decree for a long period of time doesn't mean I've been such a good boy, I can go to jail now. If you modify, and I guess you can say that modification has mooted the decree and therefore terminated, but that's not this case. Well, I thought RUFO, and, of course, you know, a couple of years ago in the Little Rock, Pulaski County DSEG case, the court said, you know, long-time compliance with a decree is one of the things you look at when you're determining whether or not to modify or terminate a decree. What about the provision, for example, that says all materials have to be designated as Palestine Wheatley? Do you think that's still in effect or not? Oh, it is, and the superintendent sitting over there, he testified. No, I don't mean whether they continue to do it. I mean, do you think that's still a court-ordered requirement? Well, I would say yes. Well, no, because I think the decree has really been terminated. That's why I'm asking. It's not clear from the judge's order. It's not clear from the judge's order. I'll concede that point. If you wanted to get out of that obligation, didn't you have to get an order that says the decree is terminated entirely? You know, I agree with you, yes. But, you know, I think the issue on appeal is whether or not the judge was correct in modifying or terminating the decree with respect to the relief requested by the district, and that was being able to move the middle school, 5, 6, 7, and 8, to the Palestine campus. And as you well know, if we simply . . . I would guess Judge Wright knew this full well. If we simply affirm it . . . Yes. . . . the way she worded it . . . Yes. . . . and the plaintiffs come in X months or years from now and say, okay, the elimination of the physical school in Wheatley has happened, but there are other aspects of that decree, and they're violating them, and we want you to enforce it. And she said, I think you're right, and enforces this whatever she's convinced has lingered. Well, I think you have . . . That's in the cards, right? You're right, but I think you have . . . Okay, and we should preserve that, or there should be some argument from you telling us why it would be unfair to preserve what the district court has preserved in the way of future uncertainty. Well, I would answer that question in the context. This decree is a little bit, to me, unusual, because except for moving the school, you have a whole number of other items that can be handled with like a stroke of the pen. Or do the right thing. Exactly. So it's not a decree where it talks about staffing. I'm worried about the do the right thing element. Why would that worry you? Well, because the fact that you've done the right thing, I'm assuming I guess plaintiffs would disagree, you've done the right thing for 20-plus years doesn't mean you'll continue. Well, I'm sure if we don't continue it, Mr. Walker could file a new lawsuit, but I just don't . . . No, no, that's the whole point of what I'm debating here. Does he have to file a new lawsuit? I think he would, because I think the judge . . . Not from what? Not from the literals, what the district court says? I certainly concede it's confusing, because the judge wasn't clear in the order. Well, I didn't see a cross appeal that urged us to terminate and eliminate this ambiguity. No, it was considered, and I just decided to take the position that it was terminated. Hope you can get away with it this morning. Yeah, I've done it before. Tell us when. Thank you. I stand available for further questions. Thank you for your time. I ask that you affirm the judge's decision. Mr. Walker, I know you've got some time. Thank you, Your Honor. I'd like to address several of the questions. The standard for evaluating or assessing this matter, in addition to the case we argued is Green v. New Kent County, and we go back to Green and we go forward. I'd just like to briefly make quick points. In the appendix, the hearing, the times are set forth. This was not something where we had a long time to prepare, Judge Collison. In page 5 of the appendix, it is noted that the motion to modify the decree was filed on June 14, 2012. We responded on July 25, 2012. And the memos were the defendant's reply to our response was filed on August 13, and the notice of hearing was given on August 15. So in terms of preparation time, we don't have any. I mean, this is motion pleading at the time up to then, and then the court just has the hearing on October 9. Now, that's not a lot of time, and she did not set out a discovery schedule. This was a motion, and she, in effect, took this as a motion and converted it into an evidentiary hearing. And the evidentiary hearings have to follow certain standards. I don't want to, I don't think we should establish a precedent that you can have an, when you're considering a motion and where you sometimes take evidence, you can then convert that into a full-fledged trial and then make a ruling on it. And we preserved our objection to that. Now, in terms of convincing or demonstrating to the minority community the good faith of the school district, it has to show something. You close the schools, that's not evidence of good faith. And then you become, in effect, a haven for some unknown number of students. And you say to the students around, the white students from the other districts who don't want to be in schools with black kids are more important than the children who are in this school arrangement where you have an accommodation that's been working for years. Now, in terms of how you weigh things like cost, well, the costs were weighed to begin with. We also know that cost is not a constitutional consideration. We know that you're going to have some transportation when you have two schools. That was always known. So when you start looking at this situation, we have to really be in a position to defend what the proof is that they put on rather than the arguments that Mr. Buffert makes. And in closing, I'll point out to you that you, as you review his brief, you see no page references to any evidence that they presented. There are none. I mean, this is just one of those cases where it's argument on behalf of the school district and the new superintendent who's been the principal for years comes up with a person that he says is a demographer who the record shows was not a demographer. He's somebody that checks the numbers. Now, under the circumstances, this is a case that should be remanded and it should be dealt with as cases ought to be dealt with. You afford competing parties or adversary parties an opportunity to develop their positions, not an emotion practice, and then to present the case and require the burden of proof to be properly placed. And after the burden of proof is properly placed, then a proper assessment can be made. And in this case, we would not be here but for the fact that this was not done in this case. And we wouldn't be here if it weren't for the fact that we believe that the district cannot meet that burden of proof. So we ask you to remand it to the district court in order to determine that the because the decree has not been terminated, that it has not been terminated, and that we are entitled to show that the elements that are set forth in Green v. New Kent County and its successor cases rather than Rufo have not been met. Thank you, and I appreciate it. Thank you, Counsel. These cases are never easy, and they raise important issues, and they've been well-briefed and argued, and the argument's been helpful. Thank you. We'll take it under advisement.